IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 11 |
| MAKING THE DOUGH, INC., | * | |
|     Debtor | * | |
| | * | |
| MAKING THE DOUGH, INC., t/a | * | CASE NO. 1:09-bk-01944MDF |
| DOMINO'S PIZZA STORES NUMBER | * | |
| 4862 (Carlisle) and 4767 | * | |
| (Mechanicsburg) | * | |
| | * | |
| v. | * | ADV. NO. 1:09-ap-00119MDF |
| | * | (Preliminary Injunction) |
| DOMINO'S PIZZA FRANCHISING, LLC | * | |
| and DOMINO'S PIZZA DISTRIBUTION, | * | |
|     Defendants | * | |

## OPINION

### Background

Making the Dough, Inc. ("Debtor") filed a chapter 11 bankruptcy petition on March 18, 2009. On March 23, 2009, it commenced this adversary proceeding against Domino's Pizza Franchising, LLC ("Domino's Franchising") and Domino's Pizza Distribution ("Domino's Distribution") (collectively "Defendants"). Contemporaneously with the filing of the complaint, Debtor filed a Motion for Preliminary Injunction and Motion for Expedited Hearing. The Motion for Expedited Hearing was granted, and a hearing was scheduled for March 26, 2009. Defendants filed an objection to Debtor's Motion for injunctive relief alleging that the Franchise Agreements had been terminated prepetition. At the hearing on March 26, the parties stipulated to the admission of the Franchise Agreements, two notices of termination and an e-mail message from Domino's Franchising to Debtor's principal. Debtor did not dispute that it had defaulted

under the terms of the Franchise Agreements and that the defaults had not been cured. Following argument, the Court took the matter under advisement.[1]

Debtor's business operations consist of two franchise restaurants: one in Carlisle, Pennsylvania and the other in Mechanicsburg, Pennsylvania. Each restaurant operates under a Standard Franchise Agreement (collectively, the "Franchise Agreements") between Debtor and Domino's Franchising. Both of these agreements, which are the same in relevant content, were renewed on January 28, 2008.

In its Motion for Preliminary Injunction, Debtor seeks a determination that the Franchise Agreements are still in force and that Defendants are required to continue to provide food products to the Debtor. It states that "[t]he franchise agreements require the plaintiff to purchase food products from the defendants . . ." Plaintiff's Motion for Preliminary Injunction, para. 7. The Franchise Agreements provide that "[Dominos] may in [its] sole discretion require that ingredients, supplies and materials used in the preparation, packaging, and delivery of pizza and other authorized food products be purchased exclusively from [Dominos], [its] affiliates or from approved suppliers or distributors." Section 12.2 of the Standard Franchise Agreement.[2]

---

[1] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is core pursuant to 28 U.S.C. § 157(b)(2)(A), (I) and (O). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052.

[2] At the March 26 hearing the parties agreed that Defendants, exercising their rights under the Franchise Agreements, were requiring Debtor to purchase its food products exclusively from Domino's Distribution as described in a "Requirements and Profit Sharing Agreement" between Domino's Distribution and Debtor. Defendants assert that the "Requirements and Profit Sharing Agreement" expired February 1, 2009. Debtor refers to this agreement in its Complaint, but it does not assert rights under the agreement in its Motion for Preliminary Injunction. Although the provisions of the Requirements and Profit Sharing Agreement were discussed at the hearing, the agreement was not introduced into evidence. Still, I am able to decide Debtor's request for

In their objection to Debtor's Motion for a Preliminary Injunction, Defendants allege the following defaults:

(1) Failure to maintain property insurance, general liability insurance, automobile liability insurance, and workers' compensation insurance;
(2) Failure to make timely royalty payments and contributions to the Advertising Fund on at least twenty-nine (29) separate occasions (defendants' counsel testified to thirty-two (32) weeks of missed royalty payments within the previous twelve (12) months) as required by the Franchise Agreements;
(3) Failure to make timely payments for food and supplies delivered to plaintiff's stores as required by Section 18.2.2 of the Franchise Agreements;
(4) Failure to install the PULSE [computer] System in plaintiff's stores as required by Section 15.1 of the Franchise Agreements; and
(5) Failure to submit a cash flow statement, balance sheet, and profit and loss statement for its stores as required by Section 14.2(b) of the Franchise Agreements.

Defendants assert that because of these defaults, they sent letters dated August 8, 2009 notifying Debtor that the Franchise Agreements were terminated effective August 11, 2008 as provided in the termination provisions of the agreements.[3] In the notices, Defendants stated that they agreed "to stay legal proceedings to enforce the termination, until September 10, 2008" to afford Debtor the opportunity to sell the franchise.

Section 18.2.1 of the Franchise Agreements provides, in part, that:

[Dominos] shall have the right to terminate this Agreement effective upon delivery of notice of termination to you [the plaintiff], if: . . . (l) you or any of your owners on three (3) or more occasions during any twelve (12) month period to comply with any one or more provisions of this Agreement including without limitation, your obligation to submit when due, sales reports or financial statements, to pay when due the royalty fees, advertising contributions or other payments to us or our affiliates or

---

injunctive relief within the framework of the Franchise Agreements and do not need to consider any additional agreements between the parties.

[3]The letters (one for each restaurant) contain a list of default notices previously sent to Debtor and a general category designation for each notice, e.g., "financial" or "insurance."

3

subsidiaries or any other creditors or suppliers of the Store, whether or not such failure to comply is corrected after notice is deliver to you.

Section 18.2.2 of the Franchise Agreements further provides, in part, that:

[Dominos] shall have the further right to terminate this Agreement effective upon delivery of notice to you, if . . .(a) you fail to obtain or maintain insurance required by us and you do not correct this failure within forty-eight (48) hours after written notice is delivered to you . . . .

At the March 26 hearing, Debtor conceded that it did not have workers' compensation or liability insurance coverage and that it had failed to make all of the required royalty payments both at the time the notices of default were sent and at the date of the hearing.[4]

After the notices of termination were sent to Debtor, Domino's Distribution continued to send product to Debtor and Defendants took no further action to enforce their right to terminate the Franchise Agreements until March 17, 2009, at which time they informed Debtor that they were "enforcing the termination of the Franchise Agreement[s] effective March 18, 2009."

## Discussion

A preliminary injunction is appropriate only in extraordinary circumstances. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 586 (3d Cir. 2002)(citations omitted). In considering whether to grant a preliminary injunction, the Court of Appeals for the Third Circuit has directed courts to consider four factors: 1) the likelihood the moving party will succeed on the merit at the final hearing; 2) the extent to which the moving party will be irreparably harmed by the defendant's conduct; 3) the extent to which the non-moving party will be irreparably harmed by the issuance of the injunction; and 4) the public interest. *McNeill Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 356-

---

[4]The other alleged defaults were not addressed at the hearing.

4

Case 1:09-ap-00119-MDF    Doc 11    Filed 03/27/09    Entered 03/27/09 13:43:21    Desc
Main Document      Page 4 of 8

57 (3d Cir. 2007); *Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006). All four factors must be considered by the court when weighing a request for injunctive relief. *Rehabworks, Inc. v. Lee (In re Integrated Health Services, Inc.*), 281 B.R. 231, 235 (Bankr. Del. 2002) (citing cases). In the within case, however, as I discuss below, it is clear as a matter of law that Debtor will be unable to succeed on the merits and, therefore, granting the injunction will inflict greater harm on Defendants than it will on Debtor.[5]

The filing of a bankruptcy petition creates an estate comprised of "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). A franchise agreement that has not been fully performed or terminated pre-petition is an executory contract. A debtor's contractual rights as a franchisee are property of the estate under § 541(a)(1), unless the franchise agreement has been terminated before the bankruptcy case is filed. *In re Tudor Motor Lodge Associates LP*, 102 B.R. 936, 948 (Bankr. D. N.J. 1989). *See also Triangle Laboratories, Inc. v. Halvajian (In re Triangle Laboratories, Inc.)*, 663 F.2d 463, 467 (3d Cir. 1981)( "executory contract . . . validly terminated prior to the institution of bankruptcy proceedings is not resurrected by the filing of the petition. . . .")

In this case, Debtor does not dispute that Defendants had grounds to terminate the lease, that notice of termination was provided under the terms of the Franchise Agreements and that Debtor failed to cure the defaults. Debtor has argued, alternatively, that Defendants' continued performance under the Franchise Agreements after the notice of termination created an implied

---

[5]The fourth factor of the test for injunctive relief – the public interest – is not invoked by the facts in this case.

novation substituting for the written agreements, or that Defendants waived performance under the Franchise Agreements by accepting Debtor's performance after notice of termination.

When a new contract is substituted for a pre-existing one and the earlier agreement is fully extinguished, the second agreement is termed a novation or substituted contract.[6] To constitute an effective substituted contract, the second agreement must: (1) displace and extinguish the obligations of a prior contract between the parties; (2) provide sufficient legal consideration for the new contract; and (3) be agreed to by the parties to the original contract. *Yoder v. T. F. Scholes, Inc.*, 404 Pa. 242, 245, 173 A.2d 120, 121-22 (1961). *First Lehigh Bank v. Haviland Grille, Inc.* 704 A.2d 135, 138-39 (Pa. Super. 1997); *Buttonwood Farms, Inc. v. Carson,* 329 Pa. Super. 312, 317, 478 A.2d 484, 486 (1984). The party that asserts the existence of a substituted contract bears the burden of demonstrating that the elements have been met. *First Lehigh*, 704 A.2d at 138-39 (citations omitted). *See also Atlantic Refining Co. v. United States*, 82 F.Supp. 201, 203 (E.D. Pa. 1948) (to abandon or modify contract, a new meeting of minds regarding abandonment or modification is required).

Debtor is unable to establish any of the elements of a novation. No evidence was offered that the obligations under the Franchise Agreements were extinguished; there surely was no consideration provided for a new agreement; and there is no evidence that Defendants agreed to a replacement agreement whose terms were undefined.

---

[6]At times, courts have used the terms "novation" and "substituted contract" interchangeably. The more contemporary view, however, is that a novation is a type of substituted contract in which one of the parties to the new agreement was neither the obligor nor the obligee of the original duty. *Refuse Management Systems, Inc. v. Consolidated Recycling and Transfer Systems, Inc.*, 448 Pa. Super. 402, 413, 671 A.2d 1140, 1145 (1996); Restatement (Second) of Contracts 280 (1979).

6

There also is inadequate support for Debtor's assertion that Defendants impliedly waived their right to terminate the Franchise Agreements by staying enforcement. Defendants explicitly stated that they were "staying enforcement" of termination to enable Debtor to sell the franchise.

Waiver is the "intentional or voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. . . " Black's Law Dictionary 1417 (5th ed. 1979). *See Baskin-Robbins Inc. v. Neiberg (In re Neiberg)*, 161 B.R. 606, 610 (Bankr. W.D. Pa. 1993). It requires a "clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it." *Johnson v. Concord Mutual Insurance Co.*, 450 Pa. 614, 620, 300 A.2d 61, 64 (1973). Although a waiver may be implied, the party relying on the waiver must have been misled and prejudiced if the other party later seeks to enforce rights under the contract. *Neiberg,* 161 B.R. at 610. Defendants' conduct in continuing to supply product and failing to demand that Debtor cease infringing upon their intellectual property rights neither misled nor prejudiced Debtor. To the contrary, Defendants forbearance from exercising their rights under the termination notice and staying enforcement for six months benefitted Debtor. "It would be a gross distortion of the law to find implied waiver where the party who relied upon a purportedly misleading act or representation by another benefitted as a result thereof while only the party who so misled them suffered a detriment." *Id.*

Defendants were well with their contractual rights when they issued the August 8 letters that provided notice of termination, and the Franchise Agreements were effectively terminated as of August 11. Debtor has failed to establish that the parties entered into a novation replacing the

Franchise Agreements or that Defendants waived performance under those agreements.

Accordingly, Debtors motion will be denied. An appropriate order follows.

By the Court,

*Mary D. France*
Bankruptcy Judge

Date: March 27, 2009

*This document is electronically signed and filed on the same date.*